**In re TEXACO INC., Texaco Capital Inc., Texaco Capital N.V., Debtors.**

**Bankruptcy Nos. 87 B 20142–87 B 20144.**

United States Bankruptcy Court, S.D. New York.

Sept. 17, 1987.

Weil, Gotshal & Manges, New York City, for debtors.

Eldred, Clauer and Davis, Baton Rouge, La., for Plaquemines Parish Government.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Industry Committee.

Kramer, Levin, Hessen, Kamin & Frankel, New York City, for General Committee.

Keck, Mahin & Cate, Chicago, Ill., for Equity Shareholders Committee.

## DECISION ON MOTION FOR RELIEF FROM THE STAY OR FOR ABSTENTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The movant, Plaquemines Parish Government ("PPG"), seeks to modify the automatic stay imposed under 11 U.S.C. § 362(a) or for abstention pursuant to 28 U.S.C. § 1334(c) in order to permit PPG to proceed with litigation which it previously commenced in the state court in Louisiana for the purpose of obtaining a judgment dissolving a portion of a mineral lease with respect to which the debtor, Texaco Inc., has an interest. Under state law the disso-

lution of the lease would have a retroactive effect to a date prior to the commencement of the debtor's Chapter 11 case. The debtor has a pending motion to assume the lease in accordance with 11 U.S.C. § 365.

At the hearing held on September 15, 1987, the parties submitted in evidence all of the pleadings and answers to interrogatories filed in the state court in Louisiana.

## FACTS

1. On April 12, 1987, the debtor, Texaco Inc., and two of its wholly-owned subsidiaries, Texaco Capital Inc. and Texaco Capital N.V., each filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. This court then entered an order directing that the three cases should be jointly administered pursuant to Bankruptcy Rule 1015(b).

2. The debtor, Texaco Inc., and its two subsidiaries, are operating their businesses as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. On April 4, 1986, PPG filed an action against the debtor, Texaco Inc. and others, in the 25th Judicial District court in and for the Parish of Plaquemines, State of Louisiana. The PPG action concerns a certain portion of a mineral lease (the "Placid Lease") and alleges that such portion of the lease should be dissolved effective as of a date prior to the commencement of the debtor's Chapter 11 case. The essence of PPG's complaint to dissolve the lease is that Texaco Inc. and the other lessees have failed to develop the portion of the lease in question, and therefore, the leased property should be awarded to PPG.

4. Texaco Inc. has stipulated that it would treat PPG's complaint as notice that PPG places Texaco Inc. in default. This step is necessary under Louisiana law in order to obtain a dissolution of the lease. The second prerequisite, namely a judicial decree as to termination or cancellation, has not yet been obtained by PPG.

5. PPG maintains that a lease which is cancelled for nondevelopment is deemed to have been terminated retroactively to the date of the formal demand or notice of default. Since the commencement of the PPG litigation on April 4, 1986 is stipulated as the required notice of default, a cancellation of the Placid Lease would be effective as of April 4, 1986, which was prior to the commencement of the debtor's Chapter 11 case on April 12, 1987.

6. On August 27, 1987, the debtor, Texaco Inc., filed with this court its motion to assume the Placid Lease.

## DISCUSSION

It is a fundamental principal of bankruptcy law that property interests are created and defined by state law and that bankruptcy courts should look to state law for the determination of property rights in the assets of debtors' estates. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Accordingly, reference must be made to Louisiana law in order to determine the extent of Texaco's interests, if any, in the Placid Lease at the time it commenced its Chapter 11 case. Under Louisiana law, a state court may cancel a mineral lease for the lessee's inactivity in oil well drilling and failure to develop the leased property retroactively to the date when a formal notice of demand was transmitted by the lessor. *Wier v. Grubb*, 228 La. 254, 82 So.2d 1 (1955). However, in the instant case, the state court has not cancelled the Placid Lease because the pending action was stayed by reason of the commencement of Texaco's Chapter 11 case.

## REQUESTED RELIEF FROM THE STAY

■ PPG argues that there is no lease for Texaco to assume or which entitled Texaco to the protection of the automatic stay because, if successful in the pending state court litigation, PPG would obtain a judgment cancelling the lease as of a time prior to Texaco's Chapter 11 case. Hence, PPG reasons, that as to the Placid Lease, there is no property of the estate for this court to administer and, therefore, the automatic stay should be lifted for cause, as expressed in 11 U.S.C. § 362(d)(1). This point elides the fact that the Placid Lease was still in existence when Texaco's Chap-

ter 11 case was filed and that Texaco still had property rights in the lease which would be regarded as property of the estate. Pursuant to 11 U.S.C. § 541(a)(1), property of the estate is defined to consist "of all legal or equitable interests of the debtor in property as of the commencement of the case." This term was intended to be interpreted broadly. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). This case is unlike the situation in *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y.1986), aff'd 70 B.R. 214 (S.D.N.Y.1986, Brieant, C.J.) where a final state court judgment of lease termination was *res judicata* as to such termination so that the automatic stay did not operate to enjoin the lessor from enforcing its right of repossession. Here, the state court in Louisiana has not yet terminated the Placid Lease. Hence, Texaco has more than a naked possessory interest in the lease; its oil drilling rights have not yet been forfeited.

> The law of Louisiana requires legal proceedings against a delinquent lessee and a judgment of the proper court before possession may be obtained. Thus the cancellation of the lease for nonpayment of rent is not effective until a court has ordered termination and granted possession.

*Pennsylvania Real Estate Investment Trust v. Fontainebleau Hotel Corp. (In re Fontainebleau Hotel Corp.)*, 515 F.2d 913 at 914 (5th Cir.1975).

The debtor in *City of Valdez, Alaska v. Waterkist Corporation*, 775 F.2d 1089 (9th Cir.1985) was in a much weaker posture than is Texaco. There, the debtor's lease had actually been terminated upon receipt of a notice of termination issued by the City Council, although the city had not yet acquired possession of the leased property. The Ninth Circuit Court of Appeals concluded that the equities strongly favored the debtor, because forfeitures are disfavored, and affirmed the lower courts' decisions that the debtor could assume the lease. Thus, the debtor's naked possessory interest was sufficient to render it property of the estate to support the debtor's as-

sumption of the lease in accordance with 11 U.S.C. § 365. This court's jurisdiction to determine all rights with respect to property of the estate was cogently expressed by a Bankruptcy Court in Louisiana, as follows:

> The motion to dismiss is based upon the argument that there are no assets for the estate to distribute but this has not been demonstrated and ignores the jurisdiction of this Court to determine all matters relating to property in which the bankrupt has any interest.

*In re Carla Charcoal, Inc.*, 14 B.R. 644 at 645 (Bankr.W.D.La.1981).

The PPG's request for relief from the automatic stay for cause on the ground that the Placid Lease has been terminated, cannot be maintained absent a state court judgment of termination. A notice of default is not self-operative; a second prerequisite to termination is the issuance of a judgment of termination or cancellation by a state court. Therefore, PPG's assertion now, as to the demise of he Placid Lease, is premature.

## ABSTENTION

In accordance with Bankruptcy Rule 5011(b), effective August 1, 1987, a motion for abstention pursuant to 28 U.S.C. § 1334(c) requires that the bankruptcy judge shall file a report and recommendation for disposition of the motion. The following shall constitute such report and recommendation:

■ The concept of abstention is governed by 28 U.S.C. § 1334(c)(1) and (2). Subection (1) deals with a discretionary abstention while subsection (2) covers mandatory abstention. Consideration will be given to mandatory abstention first. This subject involves a six-factor test as discussed by this court in *In re Consulting Actuarial Partners, Limited Partnership*, 72 B.R. 821, 827–829 (Bankr.S.D.N.Y.1987) and in *In re Allied Mechanical and Plumbing Corp.*, 62 B.R. 873, 877–878 (Bankr.S.D.N.Y.1986):

1. The movant's motion must be timely.

2. The proceeding must be based upon a state law claim or cause of action.

3. The proceeding must relate to a case under title 11 but not arise under title 11 or arise in a case under title 11.

4. The proceeding could not have been commenced in a federal court absent jurisdiction under the Bankruptcy Code.

5. An action involving the same subject matter had already been commenced and is pending in a state court.

6. The pending state court action can be timely adjudicated.

Texaco argues that PPG's motion is not timely because it was not filed until June 22, 1987, about two months after Texaco filed its April 17 application for an order authorizing the assumption by Texaco of all its oil and gas agreements. However, Texaco's application for assumption of the specific portion of the Placid Lease now in controversy was made returnable on October 27, 1987, which is after PPG's motion was filed. In these circumstances, PPG's motion is timely. Moreover, the proceeding in this court involving the Placid Lease is based upon a claim or cause of action with respect to a lease determined under Louisiana law.

The crucial element as to mandatory abstention involves the third factor, namely that the proceeding must be related to the Chapter 11 case but must not arise under or in the Chapter 11 case. This means that the right to relief in the proceeding for which abstention is sought must not depend upon the application or construction of bankruptcy law. *In re Consulting Actuarial Partners, Limited Partnership,* 72 B.R. at 828; *In re Turner,* 70 B.R. 486, 489 (Bankr.D.Mont.1987); *In re Futura Industries, Inc.,* 69 B.R. 831, 834 (Bankr.E.D. Pa.1987). PPG concedes "that the Court's review of the exercise of Texaco's business judgment to assume or reject a mineral lease as well as that the availability, nature and extent of a cure for the default, compensation for loss resulting from default and adequate assurance of future performance *are all core matters.*" (Emphasis added). PPG's Supplemental Memoran-

dum, p. 39. Nonetheless, PPG contends that "the clearly separable and pre-requisite [sic] question to the exercise of this Court's jurisdiction over *such a core proceeding* is the determination of whether the lease in question was validly terminated effective as of a date prior to the filing of Texaco's petition for bankruptcy relief." (Emphasis added). PPG Supplemental Memorandum, p. 39.

There is no question that proceedings to assume or reject executory contracts or unexpired leases are matters concerning the administration of the estate within the meaning of 28 U.S.C. § 157(b)(2)(A) and are core proceedings. *Harley Hotels, Inc. v. Rain's International Ltd.,* 57 B.R. 773 (D.M.D.Pa.1985); *In re Nexus Communications, Inc.,* 55 B.R. 596 (Bankr.E.D.N.C. 1985); *In re Republic Oil Corporation,* 51 B.R. 355, 358 (Bankr.W.D.Wisc.); *In re Turbowind, Inc.,* 42 B.R. 579, 583 (Bankr. S.D.Cal.1984). The fact that PPG urges that the state court should be allowed to determine that the Placid Lease was terminated retroactively to the time when the PPG complaint was filed in Louisiana does not detract from the fact that the lease was property of the estate when Texaco filed its Chapter 11 petition. Therefore, the Placid Lease dispute involves a core proceeding with the result that the third prerequisite for mandatory abstention has not been satisfied because the subject matter involves the application of bankruptcy law with respect to the assumption of a lease under 11 U.S.C. § 365. Hence, mandatory abstention is inappropriate.

■ Discretionary abstention is authorized under 28 U.S.C. § 1334(c)(1) in the interest of justice, or in the interest of comity with state courts or respect for state law. Manifestly, bankruptcy courts should be guided by principles of comity to respect a pending unresolved state law suit and should not exercise federal judicial authority in the disregard of the comity between the state courts and the federal courts. *In re Consulting Actuarial Partners, Limited Partnership,* 72 B.R. at 829. This discretionary abstention is intended "to soften the tensions inherent in a system

that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco Inc.,* —— U.S. ——, fn. 9, 107 S.Ct. 1519, 1526 fn. 9, 95 L.Ed.2d 1 (1987).

■ The concept of discretionary abstention involves a determination by the bankruptcy court as to whether or not issues raised in the pending state court action implicate bankruptcy principles which might have a material bearing on the debtor's reorganizational efforts.

In determining whether or not to exercise the § 1334(c)(1) discretionary power of abstention "in the interest of comity with state courts or respect for state law," it is important to recognize that Article III and Northern Pipeline considerations do not play any role with respect to that issue. The primary concern should be whether the federal bankruptcy objectives are properly served if the Bankruptcy Court conceded the constitutional jurisdiction to a state court, or whether factors of duplication of effort and delay may predominate as a consequence of abstention. In particular, it is important to analyze whether abstention could reasonably be considered to have the effect of impairing or delaying either the reorganization of a Chapter 11 debtor or the administration of a Chapter 7 estate for the benefit of all parties in interest.

1 W. Norton, Bankruptcy Law and Practice § 5.39 at 199.

The issue in the pending litigation in the state court in Louisiana involves whether or not a portion of the Placid Lease should be terminated because of a claim that Texaco did not develop the property. However, the state court had not cancelled the Placid Lease on the date when Texaco commenced its Chapter 11 case. Thus, the lease remains in full force and effect unless and until a court order of cancellation is subsequently entered.

Texaco desires to assume the Placid Lease pursuant to 11 U.S.C. § 365. If this court were to recommend discretionary abstention, Texaco would be precluded from exercising a fundamental right authorized within the original and exclusive jurisdiction conferred upon the district courts under 28 U.S.C. § 1334(a) and referred to the bankruptcy courts in accordance with 28 U.S.C. § 157(a).

[T]he pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction....

*Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

This case is unlike the situation in *In re Allen Carpet Clearance Center, East Brunswick, Inc.,* 31 B.R. 956 (Bankr.E.D. N.Y.1983), which PPG cites in support of its motion for abstention. There, the court noted that the debtors were not operating entities and had no employees, so that there would be no adverse consequences resulting from the delay caused by abstention in favor of a state court litigation involving a lease with the debtors. In the instant case, the debtors have thousands of employees actively engaged in their businesses. Any delay caused by an abstention in favor of the long pending litigation in Louisiana would clearly have an adverse impact on Texaco's Chapter 11 efforts to assume its operational leases and to further its reorganizational aims.

There is no basis for exercising the power of discretionary abstention with respect to a debtor's effort to assume an unexpired lease. A bankruptcy court should not abdicate its responsibility to decide core matters. *See In re Springer-Penguin, Inc.,* 74 B.R. 879, 885 (Bankr.S.D.N.Y.1987).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. PPG has not established cause for relief from the automatic stay in accordance with 11 U.S.C. § 362(d)(1) because the Placid Lease was not terminated by a state court and was still in full force and effect when Texaco commenced its Chapter 11 case. Therefore, the lease is property of

the estate within the meaning of 11 U.S.C. § 541.

3. PPG's motion for relief from the automatic stay for cause is denied.

4. It is recommended pursuant to Bankruptcy Rule 5011(b) that mandatory abstention authorized under 28 U.S.C. § 1334(c)(2) is inappropriate because the proceeding involving the Placid Lease arises in a case under title 11.

5. It is recommended pursuant to Bankruptcy Rule 5011(b) that discretionary abstention under 28 U.S.C. § 1334(c)(1) should not be exercised because the proceeding in question involves the debtor's assumption of a lease pursuant to 11 U.S.C. § 365, which is a core matter within the exclusive jurisdiction of this court.

SETTLE ORDER in accordance with the foregoing conclusions and recommendations.