In re SUMMERFIELD PINE MANOR.

SISTERS OF PROVIDENCE HEALTH
SYSTEM, INC., Appellant,

v.

SUMMERFIELD ELM MANOR, Summer-
field Pine Manor, Summerfield Oak
Manor, Inc. and H–C Health Services,
Inc. d/b/a Meadowood, Appellees.

BAP No. MW 97–049.

United States Bankruptcy Appellate Panel
of the First Circuit.

April 16, 1998.

Maurice M. Cahillane and Egan, Flanagan
and Cohen, P.C., Springfield, MA, for appel-
lant.

Michael J. Goldberg, Hill & Barlow, Bos-
ton, MA, for Official Unsecured Creditors
Committee.

Gregory S. Gilman, Assistant Attorney
General, Boston, MA, Pro se.

George W. Tetler, Mark Powers, Bowditch
& Dewey, L.L.P., Worcester, MA, for Sum-
merfield Pine Manor, Inc.

Before GOODMAN, HAINES and
CARLO, U.S. Bankruptcy Judges.

PER CURIAM.

This is an appeal from an order of the
United States Bankruptcy Court for the Dis-
trict of Massachusetts dated June 18, 1997
denying the motion of appellant, Sisters of
Providence Health Systems, Inc. ("SPHS" or
"Appellant") for mandatory abstention pursu-
ant to 28 U.S.C. § 1334(c)(2) ("Abstention
Motion"), denying relief from the automatic
stay pursuant to 11 U.S.C. § 362, and allow-
ing debtors' sale of assets pursuant to 11
U.S.C. § 363. The Bankruptcy Appellate
Panel of the First Circuit has jurisdiction to
hear this appeal pursuant to 28 U.S.C.
§ 158(b). For the reasons discussed below,
the Bankruptcy Court's order is affirmed.

*BACKGROUND*

The debtors are organized as four sepa-
rate, non-profit nursing homes where each
debtor owns and operates one nursing home.
The corporate structure of ownership is as
follows: Valley Health System, Inc. ("Val-
ley") is the parent corporation of Summer-
field, Inc. ("Summerfield") which is the par-
ent corporation of all four debtor non-profit
entities, Summerfield Elms Manor, Inc.,
Summerfield Pine Manor, Inc., Summerfield
Oak Manor, Inc., and Health Services d/b/a
Meadowood (collectively referred to as
"Debtors"). Neither Valley, the Debtors' up-
stream affiliate, nor Summerfield, the Debt-
ors' parent, is a debtor before this Court.

SPHS, appellant herein, operates nursing
homes and other health care services, unaffil-
iated with Debtors, in Western Massachu-
setts and in February of 1994 entered into an

agreement that would have resulted in SPHS becoming the sole corporate member of the Debtors with control of the assets. In June of 1995 Valley attempted to terminate the merger agreement and in July 1995 SPHS commenced an action in the Hampden Superior Court ("State Proceeding") against Valley for breach of contract, breach of covenant of good faith and fair dealing and for violation of Massachusetts General Laws Annotated Chapter 93A. SPHS sought specific performance and damages. The State Proceeding remains pending in state court. None of the Debtors before this Court is named as a party defendant in the State Proceeding nor is a party to the merger agreement between Valley and SPHS.

In 1996, according to the appellant's brief, Valley announced that it had agreed to sell all of the assets held by the subsidiaries, now Debtors in this case, to OHI Corporation d/b/a/ Oasis Healthcare.[1] In response, SPHS sought and obtained from the Hampden Superior Court a preliminary injunction prohibiting the sale. Again, none of the Debtors is a party to the litigation seeking injunction relief.

Debtors began to experience severe financial problems and on April 8, 1997 each filed a separate Chapter 11 petition. SPHS does not dispute that all four Debtors are properly before the Bankruptcy Court.[2] As part of their reorganization effort, the Debtors sought an early sale of their nursing homes by filing with the Bankruptcy Court a Motion For An Order Approving Bidding Procedures and Break Up Fee With Respect To The Sale Of Nursing Homes Pursuant to 11 U.S.C. § 363(f) ("Bidding Procedures Motion") together with a Motion for Sale Free and Clear of Liens and Encumbrances under 11 U.S.C. § 363(f) ("Sale Motion"). Two days prior to the hearing on the Bidding Procedures Motion, SPHS filed its opposition to them requesting that the Bankruptcy Court abstain from hearing the Bidding Procedures Motion and the Sale Motion pursuant to 28 U.S.C. § 1334(c)(2).[3]

The Bankruptcy Court approved the Bidding Procedures Motion. Thereafter, SPHS filed a Motion for Mandatory Abstention and Relief from Stay which was heard on June 18, 1997 together with the Sale Motion. At the hearing, the Bankruptcy Court denied Appellant's Abstention Motion, denied the Appellant's motion for relief from stay and allowed Debtors' application to sell assets free and clear of liens.

## DISCUSSION

The Bankruptcy Court granted the motion to establish bidding procedures, denied the motion for relief from stay, and granted the Debtors' motion to sell assets free and clear of liens. All three of these judicial determinations were core proceedings[4] within the original and exclusive jurisdiction of the district court.[5]

Clearly, the Bankruptcy Court, exercising the original and exclusive jurisdiction of the district court under 28 U.S.C. § 1334, cannot abstain from the administration of the bankruptcy case, leaving a state court to determine core matters. They are matters that arise exclusively under the Bankruptcy Code and related jurisdictional statutes establish jurisdiction in the district court and in the Bankruptcy Court, its delegatee. The provision for mandatory absten-

---

1. There is no dispute that each Debtor is a separate corporation than that of either the parent or the upstream affiliate. No explanation has been proffered on how the parent structured the sale of the assets of its subsidiaries.

2. At the Bankruptcy Appellate Panel hearing on this matter, Appellant's counsel conceded that the state court injunction could not have intended that Debtors be prohibited from seeking relief in the Bankruptcy Court.

3. The statute provides:
   Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
   28 U.S.C. § 1334(c)(2).

4. 28 U.S.C. §§ 157(b)(2)(G) and 157(b)(2)(N).

5. As delegated to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

tion under 28 U.S.C. § 1334(c)(2) clearly does not apply to core matters. *See, e.g., In re Robb,* 139 B.R. 791, 796 (Bankr.S.D.N.Y. 1992) (finding that mandatory abstention is inapplicable to core proceedings); *In re Texaco, Inc.,* 109 B.R. 609, 612–13 (S.D.N.Y. 1989) (proffering as a conclusion of law that "mandatory abstention is inappropriate in a core proceeding"); *In re Ionosphere Clubs, Inc.,* 108 B.R. 951, 954 (Bankr.S.D.N.Y.1989) (explaining that "mandatory abstention under 28 U.S.C. § 1334(c)(2) only applies to non-core proceedings").[6]

It is disingenuous to argue that creditors of these Debtors must submit their fortunes to a state court proceeding to which these Debtors are not even parties. That, in essence, would be the result if the bankruptcy court had abstained from hearing the core matters it decided. Appellant, who suggests in this appeal that a state court can better treat the rights of these Debtors' creditors than the Bankruptcy Court, is misinformed.

Accordingly, the Bankruptcy Court's decision is AFFIRMED.

---

**6.** In addition, since none of the Debtors are named as a party to the state court litigation the appellant cannot pass the threshold test of 1334(c)(2) that "the district court shall abstain from hearing such proceedings if an action is commenced." because no action has yet been commenced against these Debtors. The reference in the statute to "is commenced" means before the Debtors have filed for relief in the Bankruptcy Court. *See In re Robb,* 139 B.R. 791, 796 (Bankr.S.D.N.Y.1992).